IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-02616-RBJ

E.M.M., *et al.*,

    Plaintiffs,

v.

DOUGLAS COUNTY, COLORADO,
LESA ADAME, individually, and
CARL GARZA, individually,

    Defendants.

**ORDER GRANTING MOTION TO DISMISS**

Defendants Douglas County, Colorado, Lesa Adame, and Carl Garza move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for failure to state a claim on which relief could be granted. The motion is granted.

**I. FACTS**

Plaintiffs' claims are the latest in a series of litigations to arise out of a welfare check on a home in Colorado. Mr. and Mrs. Doe have ten children, including the three plaintiffs in this case. At the time of the events alleged in this case, the family lived in Kansas but were staying with friends in Colorado.

In spring of 2008, allegations first surfaced that a relative was abusing some of the children. Mr. and Mrs. Doe reported the first allegations to the Kansas Department of Social and

1

Rehabilitation Services ("SRS/DCF") in June 2008.[1] Thereafter Mr. and Mrs. Doe began a fast-souring relationship with SRS/DCF and in particular with the social worker assigned to them, Monica Gildner, and Gildner's supervisors, Angela Webb and Tina Abney.

On April 20, 2009 the Kansas District Attorney's Office filed ten Child-in-Need-of-Care petitions in Kansas state court, one for each child. These petitions requested termination of Mr. and Mrs. Doe's parental rights, appointment of a permanent custodian for the children, temporary removal of the children from Mr. and Mrs. Doe's custody, and an order of child support. A non-emergency hearing was set for May 11, 2009.

Sometime between April 20, 2009 and April 30, 2009, Mrs. Doe took the ten children to Colorado. They stayed at the home of family friends Dr. and Mrs. G in Douglas County. Presumably upon learning of this, the Kansas state court served ten ex parte orders of protective custody on Mr. Doe, who had remained in Kansas. Plaintiffs acknowledge that the ex parte orders contain "alarm[ing]" allegations that Mr. and Mrs. Doe had abused their children. ECF No. 12 ¶ 116. However, plaintiffs maintain that these allegations are false and based on "fraudulent[] misrepresent[ations]" that were retaliatory in nature. *Id.* ¶¶ 115, 118b.

On May 6, 2009 two Colorado state authorities—defendant Lesa Adame, a Douglas County social worker, and defendant Carl Garza, a Douglas County Sheriff's deputy—visited the Doe family at Dr. and Mrs. G's Colorado home. It is this visit that forms the foundation of the complaint. Plaintiffs allege that at the home, Adame and Garza misrepresented the ex parte orders by incorrectly claiming that they provided for Kansas to take custody of the children, and

---

[1] This state agency is now called the Kansas Department of Children and Families and is referenced in the First Amended Complaint as "SRS/DCF." ECF No. 12 at 2–3.

that they used threats and intimidation to enter the house. Once inside, Adame communicated that Kansas was taking custody of the children and restricting Mr. and Mrs. Doe's communication with the children. Adame and Garza informed Dr. and Mrs. G that Kansas state authorities would be arriving at an unspecified time to take physical custody of the children. Instead of waiting for the authorities to arrive in Colorado, Dr. and Mrs. G transported the children back to Kansas and delivered them to SRS/DCF custody themselves. Dr. G requested temporary custody of the children, or alternatively for the children's paternal grandparents to take custody. SRS/DCF denied this request, separated the children, and placed them with foster families.

Procedural History

In 2015, upon reaching the age of majority, two of plaintiffs' older siblings—N.E.L. and M.M.A.—filed suit related to the 2009 conduct ("older siblings' complaint"). *See N.E.L. v. Douglas Cty., Colo.*, No. 15-CV-02847-REB-CBS, 2017 WL 1242992, at *1, 2 n.2 (D. Colo. Jan. 27, 2017), *aff'd,* 740 F. App'x 920 (10th Cir. 2018), *reh'g denied* (July 17, 2018), *cert. denied sub nom. N.E.L. v. Douglas Cty., Colo.*, 139 S. Ct. 1320 (2019). Plaintiffs named as defendants Douglas County, Adame, Garza, Gildner, Webb, and Abney. *Id*.

The older siblings' complaint asserted six § 1983 claims under the Fourth Amendment and Fourteenth Amendment: (1) that all defendants violated the Fourth Amendment by "approv[ing] and/or conduct[ing] an unlawful seizure . . . by which Plaintiffs were deprived of their liberty without due process when they were prohibited . . . from any movement or travel with their mother, father and grandparents;" (2) that Gildner, Webb, and Abney violated the Fourth Amendment by holding plaintiffs "against their will for five days prior to a hearing on the

CINC petitions;" (3) that Adame, Garza, Gildner, Webb, and Abney violated plaintiffs' Fourteenth Amendment right to maintain a familial relationship; (4) that Adame, Garza, Gildner, Webb, and Abney conspired to deprive plaintiffs of their constitutional rights; (5) that plaintiffs were entitled to exemplary damages because "[t]he actions of Gildner, Abney, Webb, Adame and Garza were attended by retaliation, malice, ill will, intent and/or recklessness, [and] callous disregard of [p]laintiffs' rights, or indifference to [p]laintiffs' rights;" and (6) that Douglas County violated the Fourth Amendment "by adopting an unlawful policy that authorized county sheriff's personnel 'to seize [p]laintiffs based on an out-of-state *ex parte* order in violation of the United States Constitution and Colorado law,' or through deliberate indifference by failing to 'adopt a policy requiring . . . or in failing to train personnel . . . to comply with the United States Constitution and Colorado law.'" *Id*. (quoting First Amended Complaint at 44, *N.E.L.*, 2017 WL 1242992 (No. 15-CV-02847-REB-CBS)).

A magistrate judge recommended dismissal with prejudice of all of the claims against Douglas County, Adame, and Garza. *See N.E.L.*, 2017 WL 1242992, at *18. Following the older siblings' objections to that recommendation, a Colorado district court adopted the recommendation in full.[2] *See id*. The court dismissed the Fourth Amendment and Fourteenth Amendment claims against Adame and Garza based on qualified immunity. *See id*. at *10 (finding that plaintiffs had failed to allege a Fourth Amendment violation and had failed to show

---

[2] The court also transferred all of the claims against Gildner, Webb, and Abney to the District of Kansas upon finding that it lacked personal jurisdiction. *See N.E.L.*, 2017 WL 1242992, at *17. The claims against Gildner, Webb, and Abney are not relevant to the disposition of this case, in which plaintiffs have named only Douglas County, Adame, and Garza as defendants. Incidentally, the Kansas district court dismissed all of the claims based on qualified immunity, *see N.E.L. v. Gildner*, No. 17-2155-CM, 2018 WL 1185262, at *11 (D. Kan. Mar. 7, 2018), and the Tenth Circuit affirmed, *see N.E.L. v. Gildner*, No. 18-3059, 2019 WL 2592557, at *1 (10th Cir. June 25, 2019).

that defendants violated clearly established law); *id*. at *12 (finding that plaintiffs had failed to allege a Fourteenth Amendment violation). Because the court dismissed the substantive claims against Adame and Garza, it also dismissed the civil-conspiracy claim. *Id*. at *13 n.14. Finally, the court found that lack of any constitutional violation by Adame and Garza defeated the claim against Douglas County. *See id*. at *14 ("It is axiomatic that a local government body cannot be liable for damages if the plaintiff suffered no constitutional injury at the hands of a government employee.").

The Tenth Circuit affirmed in full and denied plaintiffs' subsequent petition for panel rehearing. *See N.E.L. v. Douglas Cty., Colo.*, 740 F. App'x 920, 934 (10th Cir. 2018), *reh'g denied* (July 17, 2018), *cert. denied sub nom. N.E.L. v. Douglas Cty., Colo.*, 139 S. Ct. 1320 (2019). N.E.L. and M.M.A. filed a petition for a writ of certiorari to the United States Supreme Court, which was also denied. *See N.E.L.*, 139 S. Ct. at 1320.

In the instant case, three different Doe siblings—E.M.M, N.M.M, and G.J.M—have filed a complaint against Douglas County, Adame, and Garza ("younger siblings' complaint"). ECF No. 12 at 1; *id*. ¶¶ 196–223. This younger siblings' complaint is largely identical to the older siblings' complaint. The plaintiffs assert seven § 1983 claims under the Fourth Amendment, the Fourteenth Amendment, and the right to travel. *Id*. ¶¶ 196–223. Four of these claims are identical to claims asserted in the older siblings' complaint, except to the extent that plaintiffs have removed Gildner, Webb, and Abney as defendants. These four identical claims include: (1) that Adame and Garza violated the Fourth Amendment by "approv[ing] and/or conduct[ing] an unlawful seizure . . . by which Plaintiffs were deprived of their liberty without due process when they were prohibited . . . from any movement or travel with their mother, father and

grandparents," *id.* ¶¶ 196–98; (2) that Adame and Garza violated plaintiffs' Fourteenth Amendment right to maintain a familial relationship, *id.* ¶¶ 202–08; (3) that Adame and Garza conspired to deprive plaintiffs of their constitutional rights, *id.* ¶¶ 209–12; (4) that plaintiffs were entitled to exemplary damages because "[t]he actions of Adame and Garza were attended by intent, recklessness, callous disregard or indifference to [p]laintiffs' rights," *id.* ¶¶ 217–18; and (5) that Douglas County violated the Fourth Amendment by "adopt[ing] as its policy or practice . . . warrantless seizure," or alternatively by "act[ing] with deliberate indifference" in failing to train personnel, *id.* ¶¶ 219–23. Plaintiffs have also added two new claims, including: (1) that all defendants violated the Fourteenth Amendment rights by "fail[ing] to afford [p]laintiffs notice and hearing in Colorado;" *id.* ¶¶ 199–201, and (2) that all defendants violated plaintiffs' right to travel, *id.* ¶ 213–16.

Defendants Douglas County, Adame, and Garza collectively move to dismiss. ECF No. 13 at 1. They argue that plaintiffs' claims against all defendants are barred by claim preclusion, issue preclusion, and the applicable statute of limitations; that plaintiffs' claims against Adame and Garza are barred by the doctrine of qualified immunity; and that plaintiffs' claims against Douglas County have failed to plead a claim for municipal liability. *Id.* at 3, 6, 8, 13.

"Plaintiffs naturally take strong exception to all of these arguments." *N.E.L.*, 2017 WL 1242992, at *2. Relevant here, plaintiffs contest the application of claim preclusion because they are not in privity with their siblings from the prior suit, ECF No. 29 at 3, and because the complaints do not share an identical cause of action, *id.* at 4.

Because I find that claim preclusion bars plaintiffs' claims, I do not address the remainder of defendants' arguments in their motion to dismiss.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly,* 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

The court may also consider certain documents beyond the pleadings. The court may take judicial notice of "its own files and records" and "facts which are a matter of public record" without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). However, these documents "may only be considered to show their contents, not to

prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1264–65 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

### III. ANALYSIS

Claim preclusion "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). It is based on the principle that "a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006) (citation omitted). "To apply claim preclusion, three elements must exist: '(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.'" *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)). Additionally, "even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." *Id*. (quoting *MACTEC*, 427 F.3d at 831).

Here, plaintiffs do not dispute defendants' assertion that the first element of claim preclusion—a final judgment on the merits in an earlier action—is met. Neither do I. The district court's dismissal with prejudice of the claims asserted by N.E.L. and M.M.A. against Douglas County, Adame, and Garza constitute a final judgment on the merits. *See N.E.L.*, 2017 WL 1242992, *aff'd,* 740 F. App'x 920 (10th Cir. 2018), *reh'g denied* (July 17, 2018), *cert. denied sub nom. N.E.L. v. Douglas Cty., Colo.*, 139 S. Ct. 1320 (2019). The Tenth Circuit affirmed this final judgment and the Supreme Court denied cert. *See id*. However, plaintiffs do dispute that

the second and third elements of claim preclusion are met. Plaintiffs argue that the parties in the two suits were not in privity and that there was no identity of the cause of action between the suits. I address both of these topics in turn, beginning with identity of the cause of action.

### A. <u>Identity of the Cause of Action</u>

The Tenth Circuit uses the transactional approach to analyze identity of the cause of action. *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). Under the transactional approach, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event or occurrence." *Id.* A new legal theory related to the same transaction, event, or occurrence as in the prior suit is thus precluded (assuming the other elements of claim preclusion are met). *See, e.g.*, *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504–06 (10th Cir. 2002) (finding that plaintiff's new Title VII claim against employer was barred under claim preclusion because plaintiff had asserted a Fair Labor Standards Act claim in a prior suit against the same employer for the same employment relationship). What constitutes the same transaction, event, or occurrence "is to be determined pragmatically, giving such weight to considerations as whether the facts are related in time, space, origin, or motivation." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 (1982)).

Plaintiffs argue that identity of the cause action does not exist because the younger siblings' complaint includes both new claims and new factual allegations. ECF No. 29 at 2. Contrary to plaintiffs' assertions, neither their new claims nor their new factual allegations constitute a new cause of action. As defendants point out—and as plaintiffs do not contest—the thirty-four-page complaints from both suits are textually identical aside from a few discrete

9

phrases and paragraphs. Four of the claims in the younger siblings' complaint are entirely identical to the older siblings' complaint. There are two allegedly new claims: (1) violation of procedural due process based on defendants' "fail[ure] to afford [p]laintiffs notice and hearing in Colorado," and (2) violation of plaintiffs' "right to travel to Colorado." ECF No. 12 ¶¶ 199–201, 213–16. Yet these two claims arise from the same transaction as did those in the older siblings' complaint: the removal of the ten children from Mr. and Mrs. Doe's custody by Colorado state authorities acting pursuant to a Kansas state court order. Plaintiffs' instant complaint explicitly states that "the warrantless entry and seizure of [p]laintiffs . . . was the moving force behind the deprivation of [p]laintiffs' liberty, *procedural due process*, familial association and *right to travel*." *Id.* ¶ 188a (emphasis added). I find that because all six legal claims in the younger siblings' complaint arise from the same transaction as those in the older siblings' complaint, they share identity of the cause of action.

Nor are plaintiffs' new factual allegations sufficient to defeat preclusion. "[N]ew facts in support of claims asserted in a prior action will usually not avoid application of claim preclusion" unless the new facts "*in themselves* establish *independent grounds* for a claim against the defendants in the previous action." *Hatch*, 471 F.3d at 1150 n.8 (quoting 18 James William Moore, *Moore's Federal Practice* § 131.22[1], at 131–55 (3d ed. 2006)). Here, the new factual allegations include more evidence about (1) the lack of "probable cause for [p]laintiffs' removal," [3] ECF No. 12 ¶ 187a, and (2) Douglas County's policies related to the alleged "warrantless entry and seizure of [p]laintiffs," *id.* ¶¶ 188a, 190a, 191a. Defendants' allegedly

---

[3] Specifically, plaintiffs allege that the Kansas state court that granted the CINC petitions "found and made an entry into the court's minutes, after testimony by Gildner, that no probable cause existed for [p]laintiffs' removal from their [p]arents and [g]randparents." ECF No. 12 ¶ 187a.

10

unconstitutional seizure and alleged adoption of an unconstitutional policy are not independent grounds for a claim; they are reiterations of the same grounds provided in the older siblings' complaint.

Neither plaintiffs' new claims nor their new factual allegations are sufficient to distinguish the cause of action. Plaintiffs' complaint thus hinges on whether the two sets of siblings were in privity.

### B. Privity

Claim preclusion applies only when the parties in both suits are either identical or in privity. *See Lenox MacLaren*, 847 F.3d at 1240. The concept of privity is admittedly vague; the Tenth Circuit has recognized "that no definition of privity can be automatically applied in all cases involving the doctrine of [claim preclusion]." *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). At the very least privity requires "a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Id.* (quoting *Lowell Staats Min. Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1275 (10th Cir.1989) (internal quotations omitted)).

The Tenth Circuit has not yet had occasion to consider the extent to which familial relationships establish privity. Other circuit courts recognize that although familial relationships are not on their own sufficient, they can "constitute an important factor when assessing the preclusive effects of a prior litigation." *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Baloco v. Drummond Co.*, 767 F.3d 1229, 1250 (11th Cir. 2014) ("While familial relationship standing alone is not enough, it is certainly a consideration . . . .").

11

The Supreme Court has provided some limiting guidance on the concept of privity in federal law. In *Taylor v. Sturgell*, the Court rejected the expansive doctrine of "virtual representation," which counseled preclusion "whenever the relationship between a party and a non-party is close enough to bring the second litigant within the judgment."[4] 553 U.S. 880, 894, 898 (2008). In lieu of virtual representation, the Court provided six categories that can establish privity. *See id.* at 894, 893 n.6 (noting that the list of categories "is meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy"). These categories include: (1) when a party agrees to be bound; (2) when there exists a "pre-existing substantive legal relationship;" (3) when a nonparty was "adequately represented by someone with the same interests who [was] a party" in an earlier suit;" (4) when the nonparty assumed control over the litigation; (5) when a nonparty later sues as the designated representative of a party to the earlier suit; and (6) when a special statutory scheme so directs *Id.* at 894–95.

Here, defendants assert that the "familial relationship, shared factual involvement, shared counsel and shared cause of action" establish privity. ECF No. 13 at 4. Plaintiffs respond (1) that there was no pre-existing substantive legal relationship between the three Doe siblings in the instant suit ("younger siblings") and the two older siblings from the prior suit ("older siblings") and (2) that the younger siblings were not adequately represented by the older siblings because there was neither any "understanding that [the older siblings] were authorized to act for [the

---

[4] However, the Court also noted that its rejection of the term "virtual representation" was "unlikely to occasion any great shift in actual practice." *Id.* at 904 ("Many opinions use the term 'virtual representation' in reaching results at least arguably defensible on established grounds. In these cases, dropping the 'virtual representation' label would lead to clearer analysis with little, if any, change in outcomes.").

younger siblings]" nor any "special procedures by the prior court(s) protect[ing]" the younger siblings. ECF No. 29 at 3–4.

I find that privity does exist between the younger siblings and the older siblings. Plaintiffs are correct that, post-*Taylor*, privity requires something more than mere close relationship. However, I find that that something is met here. Although there is no pre-existing substantive legal relationship, the younger siblings were adequately represented by the older siblings in the prior suit.

1. Pre-Existing Substantive Legal Relationship

The younger siblings do not have a pre-existing substantive legal relationship with the older siblings. The Tenth Circuit has described such a relationship as "one in which the parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues." *Pelt*, 539 F.3d at 1290. They often originate in property law, including "preceding and succeeding owners of property, bailee and bailor, assignee and assignor, guardian and ward and trustee and beneficiary." *Id.* (citing *Richards,* 517 U.S. 793, 798 (1996)).

Here, there is no "fiduciary, contractual or property relationship between current and prior litigants." *Id.* at 1290–91. The older siblings were not guardians or fiduciaries of their younger siblings. Nor do plaintiffs' Fourth and Fourteenth Amendment claims against government agents involve any fiduciary, contractual, or property law considerations. *See Roybal v. City of Albuquerque*, No. CIV.08-0181 JB/LFG, 2009 WL 1300048, at *7 (D.N.M. Feb. 2, 2009). Defendants rely improperly on *Baloco v. Drummond Co., Inc*, in which the Eleventh Circuit found privity between two sets children, some of which were half-siblings. 767 F.3d at 1250–51 (noting that the children in the first suit were represented by their mothers as

13

their guardians). Although the familial relationship was a factor in finding a substantive legal relationship, the court established privity primarily because the requested relief implicated property law considerations. *Id*. The children all sought to share an award of wrongful death damages as heirs or legal beneficiaries of the decedent, and thus "successive awards would be improperly duplicative." *Id*. at 1250. In contrast, the younger siblings have requested relief based on individual harm, not as heirs or legal beneficiaries.

    2. <u>Adequate Representation</u>

However, I do find that the younger siblings were adequately represented by the older siblings in the prior suit. The Supreme Court has clarified that adequate representation requires, "at a minimum," that "(1) the interests of the nonparty and her representative were aligned, and (2) *either* the party understood herself to be acting in a representative capacity *or* the original court took care to protect the interests of the non-party." *Taylor*, 553 U.S. at 900 (citations omitted) (emphasis added). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id*. The Court noted that "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id*. at 895 (citations omitted).

First, the interests of both sets of children were aligned. Plaintiffs attempt to rely on *Roybal v. City of Albuquerque* to show that familial association alone is insufficient to show joint interest. 2009 WL 1300048, at *8. In *Roybal*, a New Mexico district court held that a wife had not acted in a representative capacity for her husband for the purpose of their similar civil rights claims. *See id*. at *1. Many of the facts underlying the Roybals' separate claims were similar:

14

They revolved around an alleged wrongful search of their shared home and alleged wrongful arrests of both. *See id.* Yet the particulars of the individual claims were distinct. Mrs. Roybal alleged that she was arrested in her home's stairway and in retaliation for protesting the entry of the officers into her home by "pok[ing] one of the officers in the chest." *Id.* at *1, 2. Mr. Roybal alleged that he was arrested for an incident involving excessive force occurring in the garage. *Id.* at *2. Defendants in *Roybal* attempted to argue that "the Roybals' long marriage, close relationship, and joint ownership of the home that police entered" was sufficient to establish privity. *Id.* at *3. The court disagreed. *See id.* at *8–9. It held that a "close, intimate relationship" is insufficient to find privity under *Taylor*, and therefore that Mrs. Roybal had not been acting as a representative or fiduciary for her husband. *Id.* at *8.

In contrast to the facts of *Roybal*, more than mere familial relationship aligns the younger and older siblings here. As discussed above, the siblings sought the same relief for the *exact* same alleged conduct. Plaintiffs have alleged no relevant facts that might distinguish the two claims. The two suits are bound by more than mere "genetic relationship;" they are bound by identical facts, identical claims, and identical requests for relief. In short, they are bound by identical interests.

The older siblings also vigorously pursued those interests throughout litigation. *See Pelt*, 539 F.3d at 1287 ("Once the case proceeds to final judgment and is asserted as part of a claim preclusion defense, the question shifts from incentive to litigate to whether the absent parties' interests were *in fact* vigorously pursued and protected."). The older siblings briefed the issues in the defendants' motion to dismiss, submitted objections to the magistrate judge's recommendation, appealed the district court's adoption of the magistrate judge's

15

recommendation to the Tenth Circuit, and then petitioned the Supreme Court for certiorari (not to mention the parallel litigation and subsequent appeal to the Tenth Circuit regarding the claims against Gildner, Webb, and Abney).

Second, the older siblings must have understood that their suit positioned them in a representative capacity for all of their eight siblings, including the three sibling plaintiffs in the instant complaint. It is true that implied consent by a nonparty to be bound by a former judgment is not often found. *See* § 4453 Preclusion by Consent and Estoppel by Conduct, 18A Fed. Prac. & Proc. Juris. § 4453 (3d ed.). It is also true that the older siblings expressly stated in their complaint that they brought suit "on their own behalf." First Amended Complaint at 2, *N.E.L.*, 2017 WL 1242992 (No. 15-CV-02847-REB-CBS).

Yet there is strong indiction throughout the older siblings' complaints that the older siblings understood that their suit would serve as a quasi "test case" for the younger siblings. § 4453 Preclusion by Consent and Estoppel by Conduct, 18A Fed. Prac. & Proc. Juris. § 4453 (3d ed.). The older siblings' complaint largely reads as if it were asserting claims on behalf of all ten of the siblings. The ten siblings are primarily referred to collectively as "the children" or variations of "[p]laintiffs and their siblings." The older siblings' complaint does not differentiate between the interests of any of the ten siblings, much less between the two distinct sets of siblings. In fact, the complaint could be resubmitted under the names of any of the siblings without any alteration save the names at the top (and indeed this is almost precisely what happened here).

Further, the older siblings here had no apparent reason to believe they might *not* be acting in a representative capacity for the younger siblings. This is in contrast to cases in which

plaintiffs were deemed not in privity after intentionally deciding not to pursue class actions or group claims. *See Pelt*, 539 F.3d at 1289 (finding that the prior plaintiffs did not understand that they were serving in a representative capacity where they intentionally decided not to pursue a class action based on tensions between the respective parties). The instant case is not one in which "[t]here is no evidence that plaintiffs and their counsel were working on anyone's behalf other than their own."[5] *Id*. The language of the complaint, the close familial relation, and the shared counsel all indicate to the contrary.[6] *See Baloco*, 767 F.3d at 1250; *Trevino*, 99 F.3d at 924.

Third, contrary to plaintiffs' claims, the district court did not need to impose "special procedures" to protect their interests. ECF No. 29 at 3. Special procedures are necessary only when plaintiffs in the prior suit did not understand that they acted in a representative capacity. *See Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1307 (D.N.M. 2018) (citing *Taylor*, 553 U.S. at 900 n.11) ("[S]pecific effort to protect the interests of a nonparty are required only if the litigating party does not intend to act as a representative of the nonparty's interests."). Here, as discussed above, I find that the older siblings did understand that they acted in a representative capacity.

---

[5] Plaintiffs do emphasize that they were minors at the time that their older siblings filed suit. ECF No. 12 at 3. Yet this has little bearing on whether the *older siblings* understood themselves to be acting in a representative capacity for the younger siblings. If anything, I find it tips in favor of finding that the older siblings did understand as much. Indeed, the older siblings provided for the interests of their siblings to the extent that their status as minors mattered. In the beginning of litigation, the older siblings—who at that time were not minors—moved to redact all identifying information regarding all ten children to prevent "expos[ing] the identity of the Does' entire family, including the eight minor children." Plaintiffs' Motion to Proceed Anonymously at 2, *N.E.L.*, 2017 WL 1242992 (No. 15-CV-02847-REB-CBS).

[6] Note that these factors alone may be insufficient to show privity under *Taylor*'s rejection of virtual representation. 553 U.S. at 904. However, I find that these factors are sufficient to show this particular prong of the adequate representation analysis in this admittedly unusual case.

Furthermore, even if the older siblings did not understand themselves to be acting as representatives for their younger siblings, I find that the court engaged in adequate special procedures to protect the interests of the younger siblings. Special procedures are generally considered relevant in the context of class actions. *See Taylor*, 553 U.S. at 900–01 ("In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23."); *see, e.g.*, *Pelt*, 539 F.3d at 1284–89 (describing a court's duties in protecting absent class members). Indeed, the Supreme Court's rationale for rejecting virtual representation was that it could "allow[] courts to 'create *de facto* class actions at will.'" *See Taylor*, 553 U.S. at 901.

Plaintiffs here do not elaborate on what kind of special procedures should have been imposed. Plaintiffs and the prior litigants are siblings who share the same counsel, so formal notice was not necessary. *See Taylor*, 533 U.S. at 900 n.11 ("[N]otice is required in some representative suits, e.g., class actions seeking monetary relief . . . . But [the Supreme Court has] assumed without deciding that a lack of notice might be overcome in some circumstances." (citing *Richards*, 517 U.S. at 801)). Thus finding adequate representation here does not constitute the kind of common-law class action rejected in *Taylor*. *See id.*; *cf. Pelt*, 539 F.3d at 1289.

Claim preclusion applies to bar plaintiffs' claims. The younger siblings were in privity with the older siblings, who obtained a final judgment on the merits on a complaint that shares identity of the cause of action.

## ORDER

Defendants' motion to dismiss, ECF No. 13, is GRANTED. Plaintiffs' claims against defendants are dismissed with prejudice.

DATED this 27th day of September, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge